## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

William Earl Clemons, III,

                Petitioner,     Case No. 17-cv-10235

v.                                  Judith E. Levy
                                  United States District Judge

Paul D. Klee,

                        Mag. Judge Elizabeth A. Stafford
                Respondent.

_____/

## OPINION AND ORDER DENYING (1) PETITION FOR WRIT OF HABEAS CORPUS; (2) A CERTIFICATE OF APPEALABILITY; AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS

William Earl Clemons, III, ("petitioner"), who is presently residing at 5300 Lawton in Detroit, Michigan,[1] has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for one count of third-degree criminal sexual conduct, Mich. Comp. Laws Ann. § 750.520d(1)(b), and being a

---

[1] Petitioner was paroled on September 21, 2017, and he has a discharge date of September 21, 2019. The Court obtained this information from the Michigan Department of Corrections' Offender Tracking Information System (OTIS), which this Court takes judicial notice of. *See Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821 n.3 (E.D. Mich. 2004).

fourth felony habitual offender, § 769.12. For the reasons set forth below, the Court denies the petition for a writ of habeas corpus.

## I.    Background

Petitioner was charged with sexually assaulting the babysitter of his two minor children. On October 23, 2012, Faith Marie Taylor testified at the Preliminary Examination that after relocating from North Carolina to Michigan, she met petitioner in front of a car wash when her car broke down. Petitioner volunteered to help and purchased a water pump to repair her car. Taylor and petitioner exchanged phone numbers and a few days later, petitioner sent a series of sexually explicit pictures to Taylor. Taylor told petitioner to stop disrespecting her, and petitioner stopped sending any further indecent pictures or messages. (ECF No. 8-2, PageID.362–68.)

A couple of days later, petitioner called and asked Taylor if she could babysit his two children. Petitioner agreed to pay Taylor $15.00 an hour to watch his two sons. Petitioner picked Taylor up and initially took her to a friend's house. He then took her to a park. It became apparent to Taylor that petitioner was waiting for his girlfriend to leave the apartment for work, before bringing Taylor to the apartment.  Petitioner

provided Taylor with his ID and instructions to remain at the park. He later returned with the two boys in a double stroller and left alone shortly thereafter. Taylor babysat the children at the park for about an hour before petitioner returned to walk the group back to his apartment. (*Id.* at PageID.368–76.)

Upon arriving at the apartment, petitioner told Taylor that he was going to take a shower and then be gone for three hours.  He instructed her to put the boys to sleep. After petitioner got out of the shower and dressed, Taylor became concerned that petitioner was not going to leave. Petitioner confirmed that he did not have plans to leave the apartment. (*Id.* at PageID.375–78.)

Taylor testified that petitioner began drinking and touching her inappropriately. She asked that he stop. Taylor further testified that she went into the bathroom where her phone was charging. Petitioner went into his bedroom. Taylor then also went into the bedroom to ask petitioner to call her a cab and she told him that she was "ready to get the hell out of this house." (*Id.* at PageID.384.)

Next, Taylor testified about the sexual assault. After she asked to leave, petitioner "dropped his pants and showed his penis." (*Id.* at

PageID.385.) At this point, she testified that he had a gun, pointed it at her, and eventually threw her onto the bed. She testified that he "pulled [her] shorts down and stuck his two fingers in [her] vagina" while he held a gun a foot away from her head. Shortly after penetrating her, petitioner cried, said he was sorry, and begged Taylor to forgive him. (*Id.* at PageID.385–87.)

Petitioner pleaded no-contest in the Oakland County Circuit Court to a reduced charge of third-degree criminal sexual conduct and being a fourth habitual offender. The judge took his plea as follows:

On February 28, 2013, petitioner entered his plea as follows:

THE COURT: And do you understand that you are pleading no contest to one count of criminal sexual conduct in the 3rd degree and habitual fourth?
MR. CLEMONS: Yes, your Honor.
THE COURT: And do you know that the most time you could receive on the underlying charge is fifteen years and with the habitual it could be life and the shortest time you must do is a term of years?
MR. CLEMONS: Yes, your Honor.
THE COURT: And pursuant to *People v Cobbs*, have there been any statements about your sentence?
MR. CLEMONS: No, your Honor. Oh yes yeah, sure.
THE COURT: You understand that the court is willing to go along with the agreement of five to fifteen?
MR. CLEMONS: Yes, your Honor.
THE COURT: And is there a plea bargain?

4

MR. CLEMONS:  Yes, your Honor.

THE COURT:  And has that whole plea bargain been stated on the Record?

MR. CLEMONS:  Yes, your Honor.

THE COURT:  Sir, do you understand that you have that a *[sic]* right to have your own lawyer represent you from start to finish, including trial, sentence and appeal and the court will appoint a lawyer for you if you cannot afford a lawyer of your own choice?

MR. CLEMONS:  Yes, your Honor.

THE COURT:  Do you understand that you have a right to a trial by jury, or by a Judge without a jury, if the prosecutor and the Judge agree?

MR. CLEMONS:  Yes, your Honor.

THE COURT:  Do you understand that throughout the trial you are presumed innocent unless the prosecutor proves your guilt beyond a reasonable doubt?

MR. CLEMONS:  Yes, your Honor.

THE COURT:  Do you understand that you have a right to have all the witnesses against you appear at the trial, to have your lawyer ask those witnesses questions, and to have the court order any witnesses you may have to appear at the trial?

MR. CLEMONS:  Yes, your Honor.

THE COURT:  Do you understand that you do not have to testify at trial and no one can say anything about your *[sic]* not testifying or hold it against you?  On the other hand, do you understand you have the right to testify at trial if you want to?

MR. CLEMONS:  Yes, your Honor.

THE COURT:  Do you understand that if this court accepts your no contest plea you will not have a trial of any kind and you will be giving up these rights that I've just told you about.

You'll also be giving up any claim that your plea was the result of promises and threats that were not
disclosed to the court and that it was not your choice to plead no contest?

MR. CLEMONS: Yes, your Honor.

THE COURT: Do you understand that any appeal from the conviction and sentence following the plea will be by application for leave to appeal and not by right?

MR. CLEMONS: Yes, your Honor.

THE COURT: Do you understand that a plea of no contest means you'll have a conviction?

MR. CLEMONS: Yes, your Honor.

THE COURT: Do you understand that if you were on probation or parole this plea could affect your probation or parole status?

MR. CLEMONS: Yes, your Honor.

THE COURT: Are you a citizen of the United States?

MR. CLEMONS: Yes, your Honor.

THE COURT: Has anyone threatened you in order to get you to plead?

MR. CLEMONS: No, your Honor.

THE COURT: Is it your own choice to plead?

MR. CLEMONS: Yes, your Honor.

THE COURT: And will you state for the Record where the offense occurred?

MR. CLEMONS: Waterford Township, Michigan.

THE COURT: And the factual basis for the no contest plea?

MR. GEORGE: Your Honor, I believe the parties would stipulate to Waterford police report CR number 120021291. Also, your Honor, there was a preliminary exam that was held in the Waterford District Court on October 23rd, 2012. Your Honor, I believe the parties will stipulate that both the police report and the exam transcript would provide a factual basis

for count two in the Information, that is criminal sexual
conduct in the 3 degree.
MR. RIBITWER: So stipulated, Judge.
THE COURT: All right then, the court will accept both the
police report and the preliminary exam transcript to establish
the factual basis for the plea in this matter.
Both sides agree that I've complied with the court rule?
MR. GEORGE: Yes, Ma'am.
MR. RIBITWER: Yes, Judge.

(ECF No. 8-4, PageID.435–39.) In exchange for his plea, the Oakland

County Prosecutor agreed to dismiss the first-degree criminal sexual

conduct, felony-firearm, and felon in possession charges and further

agreed that petitioner would be sentenced to five to fifteen years in

prison. Petitioner was sentenced on March 25, 2013, to five to fifteen

years in prison. Petitioner's conviction was affirmed on direct appeal.

*People v. Clemons,* No. 319179 (Mich. Ct. App. Jan. 13, 2014); *lv. den.,*

495 Mich. 1008 (2014).

On August 11, 2014, petitioner signed and dated his post-conviction

motion for relief from judgment, which was then filed with the Oakland

County Circuit Court. (ECF No. 8-9.) The trial court denied the motion.

*People v. Clemons,* No. 12-243435-FC (Oakland County Circuit Court,

Aug. 25, 2014).

Following the denial, petitioner filed an appeal from the denial of his post-conviction motion with the Michigan Court of Appeals. On September 11, 2014, petitioner filed a petition for a writ of habeas corpus with this Court, which was dismissed because his appeal before the Michigan Court of Appeals was still pending. *Clemons v. Haas,* No. 2:14-cv-13625, 2014 WL 4843699 (E.D. Mich. Sept. 29, 2014).

The Michigan appellate courts ultimately denied petitioner's motion for post-conviction relief. *People v. Clemons*, No. 324012 (Mich. Ct. App. Dec. 26, 2014); *lv. den.* 499 Mich. 854 (2016).

On January 23, 2017, petitioner filed the habeas petition that is now before this Court alleging that the denial by the Michigan Court of Appeals of his ineffective assistance of counsel claims was an unreasonable application of clearly established federal law. He alleges:

> A. Ineffective assistance of trial counsel for various reasons, which he believes entitles him to withdraw his plea, including: ineffective assistance at the preliminary examination and refusal to investigate;
>
> B. Ineffective assistance of appellate and substitute appellate counsel for failing to meet filing deadlines and failing to appeal within the time limits of filing a motion to withdraw his plea; and
>
> C. Actual innocence.

(ECF No. 1, PageID.30–31.)

## II.     Legal Standard

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law

if the state court arrives at a conclusion opposite to that reached by the

Supreme Court on a question of law or if the state court decides a case

differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).

An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state

court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.

## III. Analysis

Petitioner brings various claims of ineffective assistance of trial and appellate counsel. He also argues that he is actually innocent. But his arguments fail for the reasons set forth below.

As a preliminary matter, respondent contends that petitioner's claims pertaining to James Scott—his ineffective assistance of trial

counsel claim and ineffective assistance of his first appellate counsel claims—are procedurally defaulted. Procedural default is not a jurisdictional bar to review of the merits of an issue, *see Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Application of a procedural bar would not affect the outcome of this case, and the Court will proceed directly to the merits.

## A. Ineffective Assistance of Trial Counsel

Petitioner alleges that trial counsel was ineffective at his preliminary examination and by failing to investigate and interview witnesses. He also contends that he was coerced into entering a plea and sentence agreement without knowing about the existence of exculpatory evidence, and therefore requests to withdraw his plea.

An unconditional guilty plea constitutes a waiver of all pre-plea non-jurisdictional constitutional deprivations. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). A no-contest plea also constitutes a waiver of all non-jurisdictional defects. *United States v. Freed*, 688 F.2d 24, 25 (6th

Cir. 1982); *Wolfenbarger*, 387 F. Supp. 2d at 747. In the Sixth Circuit, pre-plea claims of ineffective assistance of trial counsel are considered non-jurisdictional defects that are waived by a guilty or no-contest plea. *See United States v. Stiger*, 20 F. App'x 307, 309 (6th Cir. 2001); *Rice v. Olson*, No. 16-1125, 2016 U.S. App. LEXIS 13442, at *5 (6th Cir. July 15, 2016). Accordingly, petitioner is not entitled to habeas relief on any ineffective assistance of trial counsel claims that occurred prior to him pleading no-contest. This includes his arguments regarding counsel's failure to investigate and interview witnesses.

Petitioner also raises issues surrounding his no-contest plea. Specifically, he argues that trial counsel was ineffective in advising him to accept the plea and by withholding exculpatory evidence and that his no-contest plea was not given freely and voluntarily.

First, petitioner has no absolute right to withdraw his no-contest plea. *See Wolfenbarger*, 387 F. Supp. 2d at 748 (citing cases). Therefore, unless the plea violated a clearly-established constitutional right, whether to allow the withdrawal of a criminal defendant's guilty or no-contest plea is discretionary with the state trial court. *Id*. A guilty or no-contest plea that is entered in state court must be voluntarily and

intelligently made. *See Shanks*, 387 F. Supp. 2d at 749 (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)); *Doyle v. Scutt*, 347 F. Supp. 2d 474, 482 (E.D. Mich. 2004) (same). In order for a plea of guilty or no-contest to be voluntarily and intelligently made, the defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 257 (6th Cir. 1991); *Shanks*, 387 F. Supp. 2d at 749. The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he is pleading guilty or no-contest. *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994). When a petitioner brings a federal habeas petition challenging his plea of guilty or no-contest, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id*.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-

prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard applies as well to claims

of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

With respect to effective assistance of counsel in the context of a plea, the Supreme Court has noted that

> [a]cknowledging guilt and accepting responsibility by an early plea respond to certain basic premises in the law and its function. Those principles are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place. Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve. A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger. The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.

*Premo v. Moore*, 562 U.S. 115, 124–25 (2011). The Supreme Court further admonished:

> These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude *Strickland* requires can create at least two

problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. AEDPA compounds the imperative of judicial caution.

. . . [I]neffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant "to escape rules of waiver and forfeiture[.]" Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Premo,* 562 U.S. at 125 (internal citations and quotations omitted).

Second, in order to satisfy the prejudice requirement for an ineffective assistance of counsel claim in the context of a guilty or no-

contest plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Premo*, 562 U.S. at 129 (citing *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985)). An assessment of whether a defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill,* 474 U.S. at 59. The Sixth Circuit has interpreted *Hill* to require a federal habeas court to analyze the substance of the habeas petitioner's underlying claim or defense to make this determination. *See Maples v. Stegall,* 340 F.3d 433, 440 (6th Cir. 2003). Petitioner must therefore show a reasonable probability that but for counsel's errors, he would not have pleaded guilty or no-contest, because there would have been a reasonable chance that he would have been acquitted had he insisted on going to trial. *See Garrison v. Elo*, 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001).

A habeas petitioner's conclusory allegation that, but for an alleged attorney act or omission he would not have pleaded guilty or no-contest, is insufficient to prove such a claim. *Id.* The test of whether a defendant would have not pleaded guilty or no-contest if he had received different

advice from counsel "is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). A rationality inquiry is "typically based on multiple factors, including the strength of the evidence against a defendant, the lack of viable defenses, and the benefits of the plea bargain. *Plumaj v. Booker*, 629 F. App'x 662, 667 (6th Cir. 2015) (citing *Pilla*, 668 F.3d at 373; *Haddad v. United States*, 486 F. App'x 517, 522 (6th Cir. 2012)). *See also Pidgeon v. Smith*, 785 F.3d 1165, 1173 (7th Cir. 2015) ("The terms of a plea deal are admittedly relevant in assessing the credibility of a petitioner's claim that he would have gone to trial had he received correct information at the plea bargaining stage."). When evaluating a state prisoner's claims of ineffective assistance of counsel during plea bargaining, federal courts must "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

Under the circumstances presented here, trial counsel's advice to plead no-contest to a charge of third-degree criminal sexual conduct with a sentence agreement of 5-15 years in custody was a reasonable strategy. *See Bonior v. Conerly,* 416 F. App'x 475, 479 (6th Cir. 2010). Petitioner faced up to life in prison if convicted of the first-degree criminal sexual conduct charge. Petitioner was also charged with being a fourth felony habitual offender, which would have raised the maximum penalty for the charges to life in prison. Had petitioner been convicted of first-degree criminal sexual conduct and being a fourth felony habitual offender, he could have been sentenced to life in prison. Petitioner also faced a mandatory consecutive two-year prison term had he been convicted of the felony-firearm charge. *See* Mich. Comp. Laws Ann. § 750.227b. In turn, the favorable plea bargain that petitioner received weighs against a finding that counsel was ineffective for advising a no-contest plea. Additionally, petitioner confessed to the crimes.

The relief that petitioner seeks is a finding of merit on his pre-plea claims, which in turn, would allow him to withdraw his plea. At the time of the filing of the habeas petition, petitioner did not know that he would be discharged from parole on September 21, 2019.

"The nature of relief secured by a successful collateral challenge to a guilty plea—an opportunity to withdraw the plea and proceed to trial—imposes its own significant limiting principle:  Those who collaterally attack their guilty pleas lose the benefit of the bargain obtained as a result of the plea.  Thus, a different calculus informs whether it is wise to challenge a guilty plea in a habeas proceeding because, ultimately, the challenge may result in a less favorable outcome for the defendant, whereas a collateral challenge to a conviction obtained after a jury trial has no similar downside potential." *Padilla v. Kentucky*, 559 U.S. 356, 372–73 (2010) (emphasis in original).

At the time of the plea, trial counsel indicated that petitioner would, if found guilty, be facing life in prison on the first-degree criminal sexual conduct and the habitual fourth offender charge. Were this Court to grant petitioner habeas relief and order that his plea be vacated, petitioner would face the possibility of up to life imprisonment if convicted after trial.  Whereas petitioner is due to be discharged from parole on September 21, 2019 as a result of the plea, withdrawal of the plea and sentence could subject petitioner to trial on the underlying charges and continued involvement with the criminal justice system.

Additionally, Petitioner has failed to show a reasonable probability that he could have prevailed had he insisted on going to trial, or that he would have received a lesser sentence than he did by pleading no-contest. *See Wolfenbarger,* 387 F. Supp. 2d at 750. Petitioner was charged with first-degree criminal sexual conduct which carries up to life in prison plus a habitual fourth which raises the max to life. The plea agreement reduced the charge to third-degree criminal sexual conduct with a sentence agreement of five to fifteen years and dismissal of the firearms charges. Petitioner was, indeed, then sentenced to 5-15 years imprisonment. He is now on parole with a discharge date of September 21, 2019. Petitioner is not entitled to relief on his ineffective assistance of trial counsel claim related to entry of his plea.

## B. Ineffective Assistance of Appellate Counsel

Petitioner also brings claims ineffective assistance of appellate counsel and substitute appellate counsel.

Petitioner first alleges that he was denied the effective assistance of appellate counsel when counsel failed to file an application for leave to appeal with the Michigan Court of Appeals. Petitioner had six months after his sentence pursuant to Mich. Crim. R. 7.205(F)(3) to file a delayed

application for leave to appeal. As relevant to this claim, on April 25, 2013, the trial court appointed appellate counsel to file petitioner's leave to appeal with the Michigan Court of Appeals. (ECF No. 1, PageID.41) On September 26, 2013, appellate counsel filed a motion to withdraw the plea. In the motion to withdraw the plea and attached affidavit, petitioner alleged that trial counsel did not advise him that the prosecutor might dismiss the charges if he passed a polygraph test. The same day, appellate counsel also filed a motion to withdraw as counsel, citing a break-down in the attorney-client relationship. The trial court granted counsel's request to withdraw and appointed substitute appellate counsel on October 10, 2013, who then filed petitioner's application for leave to appeal with the Michigan Court of Appeals. (ECF No. 1, PageID.28). Substitute appellate counsel raised two claims seeking to withdraw the plea: 1) actual innocence; and 2) the ineffective assistance of trial counsel. The Michigan Court of Appeals denied petitioner leave, finding "lack of merit in the grounds presented." (ECF No. 8-7, PageID. 455, 451).

Although the Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel both on appeals of right,

*Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985), and on first-tier discretionary appeals, *Halbert v. Michigan*, 545 U.S. 605, 609–10 (2005),[1] petitioner's claim has been mooted because the trial court appointed substitute appellate counsel, who file his delayed application with the Michigan Court of Appeals. Petitioner is thus unable to establish that he was prejudiced because of his initial appellate attorney's failure to file a timely appeal, in light of the fact that substitute counsel filed a timely application for leave with the Michigan Court of Appeals.[2] *See e.g. United*

---

[1] In November of 1994, Michigan voters approved Proposal B, which amended the state constitution to remove the right of appeal from criminal defendants who plead guilty. Proposal B amended Mich. Const. 1963, art. 1, § 20, to state that a criminal defendant has "an appeal as a matter of right, except as provided by law an appeal by an accused who pleads guilty or nolo contendere shall be by leave of the court . . .." Because petitioner pleaded guilty, he was not entitled to an appeal of right but did have the right to file an application for leave to appeal. *Halbert* indicated that defendants in plea-based cases have the right to the effective assistance of counsel on such appeals.

[2] The Court rejects petitioner's argument that prejudice should be presumed in his case. (ECF No. 1, PageID.30) The Supreme Court has held that the "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *Strickland,* 466 U.S. at 692. However, in order for a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case, so that reversal based on ineffective assistance of counsel is warranted without any inquiry into prejudice, the attorney's failure to test the prosecutor's case "must be complete." *Bell v. Cone,* 535 U.S. 685, 697 (2002). The presumption of prejudice extends to the denial of counsel on appeal. *Penson v. Ohio*, 488 U.S. 75, 88 (1988). However, a case in which a defendant is denied counsel on appeal "is unlike a case in which counsel fails to press a particular argument on appeal...or fails to argue an issue as effectively as he or she might." *Id.* at 88 (internal citation omitted). Thus,

*States v. Skelton*, 68 F. App'x 605, 607 (6th Cir. 2003) (explaining that a defendant was not prejudiced by counsel's failure to file timely notice of appeal, barring ineffective assistance of counsel claim on that basis, where defendant was granted an extension of time in which to file his notice of appeal); *United States v. Herrera-Rivera*, 25 F.3d 491, 497 (7th Cir. 1994) (defendant suffered no prejudice from counsel's failure to file timely notice of appeal when district court permitted out-of-time appeal). "Since no other Supreme Court precedent has expanded the *Evitts* rule to require a forum for ineffective assistance of appellate counsel claims when the appellant's case was actually heard and decided," as was the case here, petitioner is not entitled to habeas relief on his claim. *Wilson v. Parker*, 515 F.3d 682, 708 (6th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (Feb. 25, 2009).

Petitioner then argues that substitute appellate counsel failed or resisted raising certain issues. But this Court has already determined that the ineffective assistance of trial counsel claims raised in petitioner's delayed application for leave to appeal are without merit. "[A]ppellate

---

although the denial of counsel altogether on appeal warrants a presumption of prejudice, mere ineffective assistance of counsel on appeal does not. *Smith v. Robbins,* 528 U.S. 259, 286 (2000).

counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because the claims cannot be shown to be meritorious, appellate counsel was not ineffective in the handling of petitioner's direct appeal.

Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claims.

## C. Actual Innocence

Petitioner next argues that he is entitled to habeas relief because the state trial court failed to grant him a new trial or an evidentiary hearing on his newly discovered evidence claim. The newly discovered evidence consisted of an affidavit of a neighbor by the name of Otis Guy. Guy asserted that the victim falsely accused petitioner of criminal sexual conduct when petitioner refused her demand to purchase drugs.

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. *Id.* Federal habeas courts sit to ensure that individuals are

not imprisoned in violation of the Constitution, not to correct errors of fact. *Id.*; *see also McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). Freestanding claims of actual innocence are thus not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer*, 484 F.3d 844, 854–55 (6th Cir. 2007) (collecting cases).

Moreover, the Supreme Court's subsequent decision in *House v. Bell*, 547 U.S. 518 (2006) does not affect the outcome of this claim, because the Supreme Court declined to resolve whether a habeas petitioner may bring a freestanding claim of actual innocence. *Id.* at 554–55. Although the Supreme Court noted that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim," *id.* (quoting *Herrera*, 506 U.S. at 417), the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside of the death-penalty context. Petitioner's claim of newly

discovered evidence, therefore, is not sufficient on its own to support habeas relief.

In considering federal habeas petitions, a federal district court must presume the correctness of state court factual determinations, and a habeas petitioner may rebut this presumption only with clear and convincing evidence. *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir.2001); *Jones v. Smith*, 244 F. Supp. 2d 801, 808 (E.D. Mich. 2003); 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting this presumption "by clear and convincing evidence." 22 U.S.C. § 2254(e)(1). Furthermore, a federal court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Schlup v. Delo*, 513 U.S. 298, 332 (1995).

Petitioner attaches to his petition two affidavits in support of his claim that the charges brought against him were fabricated by the victim. Petitioner provided the first affidavit of Otis Guy in his late application for leave to appeal with the Michigan Court of Appeals. That court denied petitioner relief on the merits.

The second "affidavit" is a one paragraph unauthenticated letter from James Scott, which was raised for the first time in petitioner's

motion for relief from judgment before the trial court. On August 25, 2014, the trial court denied petitioner's motion for lack of merit. *People v. Clemons III,* No. 12-243435-FC (Oakland County Circuit Court Aug. 25, 2014). The exculpatory evidence in the form of an unauthenticated affidavit from the second proposed witness, James Scott, lacks any indication of credibility, and petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim related to this evidence. *See Arredondo v. U.S.,* 178 F.3d 778, 782-83 (6th Cir. 1999); *Johnson v. United States*, 239 F.2d 698, 699 (6th Cir. 1956).

Based on these two affidavits, petitioner brings a freestanding claim of actual innocence. However, because the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside of the death-penalty context, petitioner's actual innocence claim is non-cognizable. *See McQuiggin*, 133 S. Ct. at 1931. Moreover, petitioner is not entitled to relief on this ground.

### D. Other Argument: Courts' failure to make findings of fact

Petitioner also includes an argument that the trial court wrongfully denied his post-conviction motion for relief from judgment without making any specific findings of fact.

Petitioner's claim that the Michigan courts wrongfully denied him post-conviction relief is non-cognizable. A federal habeas corpus petition cannot be used to mount a challenge to a state's scheme of post-conviction relief, *Greer v. Mitchell*, 264 F.3d at 681, because states have no constitutional obligation to provide post-conviction remedies. *Id.* (citing to *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987)). "A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not 'result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention.'" *Cress*, 484 F.3d at 853 (quoting *Kirby*, 794 F.2d at 247). Thus, the "'scope of the writ'" does not encompass a "second tier of complaints about deficiencies in state post-conviction proceedings." *Id.* "[T]he writ is not the proper means to challenge collateral matters as opposed to the underlying state conviction giving rise to the prisoner's incarceration." *Id.* (internal quotations omitted).

Accordingly, petitioner's allegation that his constitutional rights were violated when the state post-conviction relief court failed to make any findings of fact or conclusions of law does not rise to the level of a

cognizable claim and cannot serve as a basis for granting petitioner habeas relief. Petitioner is not entitled to habeas relief on his claim that the trial court wrongfully denied him relief.

## IV.  Denial of Certificate of Appealability

For all of the foregoing reasons, the petition for a writ of habeas corpus is denied. Further, the Court will not grant a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id*. at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *See Millender v. Adams*, 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). Petitioner is not granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. See Fed. R. App. P. 24(a).

## V. Conclusion

Accordingly, the Court DENIES WITH PREJUDICE the petition for a writ of habeas corpus. The Court further DENIES a certificate of appealability and leave to appeal *in forma pauperis*.

IT IS SO ORDERED.

Dated: September 10, 2019       s/Judith E. Levy
        Ann Arbor, Michigan         JUDITH E. LEVY
                                         United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 10, 2019.

                                 s/Shawna Burns
                                 SHAWNA BURNS
                                 Case Manager